PEARSON, J.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LESLIE JOHNSON,                          )
                                         )     CASE NO.  4:12CV2802
            Plaintiff,                   )
                                         )
      v.                                 )     JUDGE BENITA Y. PEARSON
                                         )
UNITED STATES                            )
BUREAU OF PRISON, *et al.*,              )
                                         )     **MEMORANDUM OF OPINION**
            Defendant.                   )     **AND ORDER**


*Pro se* Plaintiff Leslie Johnson is a federal inmate incarcerated at Northeast Ohio

Correctional Center ("NEOCC"), a prison owned and operated by Corrections Corporation of

America ("CCA").  Plaintiff filed this *Bivens*[1] action against the United States Bureau of Prisons

("BOP"), "NEOCC Youngstown (Chief of CCA)", NEOCC Officer Murphy, NEOCC Captain

Austin, NEOCC Sergeant McMillan, NEOCC Unit Manager Delgado, NEOCC Special

Investigative Services ("SIS") Lieutenant Conway, NEOCC Counselor Lubonovich, NEOCC

Counselor Moore, NEOCC Officer Mort, NEOCC Officer Daily, and NEOCC Unknown Officer

John Doe.  In the Complaint (ECF No. 1), Plaintiff alleges he was physically assaulted by Officer

Murphy.  He seeks monetary relief.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
388 (1971).

(4:12CV2802)

## I.  Background

Plaintiff alleges he was hospitalized in a Youngstown, Ohio medical facility in February 2011.  ECF No. 1 at 4.  Because he was a prisoner at NEOCC at that time, he was under the constant supervision of two corrections officers during his hospitalization.  Plaintiff alleges that on February 5, 2011, Officer Murphy and Officer John Doe were assigned to his hospital room.  ECF No. 1 at 4-5.  He claims he informed Officer Murphy that he needed to use the restroom.  ECF No. 1 at 4.  He contends Officer Murphy was watching television and did not respond right away to the request for assistance.  ECF No. 1 at 4.  Plaintiff claims that when Officer Murphy acknowledged Plaintiff's request, he took Plaintiff into the restroom and handcuffed him to a rack about eight feet from the toilet.  ECF No. 1 at 4-5.  Plaintiff contends he questioned how he was supposed to use the toilet from so far away and Officer Murphy grabbed him by the shoulders and threw him against the wall.  ECF No. 1 at 5.  He claims his neck, shoulder, back, right hip, and right knee were injured, and his right ankle became very swollen.  ECF No. 1 at 5.  He alleges that when he regained his footing after being thrown, he was forced to urinate on the floor.  ECF No. 1 at 5.

Plaintiff alleges Officer John Doe and Officer Murphy were talking in hushed tones about Murphy's use of excessive force in the bathroom, after Plaintiff returned to his bed.  ECF No. 1 at 5.  Plaintiff claims a nurse came to the room to check Plaintiff's vital signs, and upon noticing they were elevated, inquired if anything had occurred.  ECF No. 1 at 5.  Plaintiff alleges that although Officer Murphy stared at him menacingly, he told the nurse about the incident in the restroom.  ECF No. 1 at 5-6.

2

(4:12CV2802)

Later that day, Officer Mort and Officer Daily relieved Officer Murphy and Officer John Doe, and Plaintiff reported the incident to the new officers.  ECF No. 1 at 6.  They in turn reported the incident to Sergeant McMillan, who came to the hospital to take Plaintiff's statement.  ECF No. 1 at 6.  Plaintiff was released from the hospital on February 6, 2011.  ECF No. 1 at 6.

Plaintiff contends that when he arrived back at the prison, he found Officer Murphy waiting for him in the hallway outside of his unit.  ECF No. 1 at 6.  He indicates Officer Murphy stared menacingly at him in an attempt to intimidate him.  ECF No. 1 at 6.  Plaintiff met with Counselor Lubonovich on February 7, 2011.  ECF No. 1 at 6.  Officer Moore was also present. ECF No. 1 at 6.  Plaintiff explained what had occurred at the hospital and the counselor called the Unit Manager to report the incident.  ECF No. 1 at 6.  He claims he was then taken to meet with the "Chief of CCA Youngstown."  ECF No. 1 at 6-7.  After explaining what had occurred, he was placed in segregation.  ECF No. 1 at 7.  He remained there for two weeks until his transfer to Morgantown, West Virginia.  ECF No. 1 at 7.

Plaintiff asserts twelve counts for relief.  In his first count, he alleges the BOP acquiesced to Officer Murphy's excessive use of force, thereby making the United States liable to him under the Eighth Amendment.  His second count is similar to the first.  He asserts NEOCC acquiesced to Officer Murphy's excessive use of force, thereby making it liable to him for damages.  In his third count, Plaintiff asserts Officer Murphy used excessive force in violation of the Eighth Amendment.  In his fourth and fifth causes of action, Plaintiff alleges that although Officers Mort and Daily reported the incident to their superiors, they did not report Officer Murphy's actions to

3

(4:12CV2802)

internal affairs and, therefore, acquiesced to Officer Murphy's use of excessive force.  Plaintiff

claims in counts seven and eight that Sergeant Mc Millan and Captain Austin allowed Plaintiff to

be placed in segregation and, therefore, also acquiesced to Officer Murphy's use of excessive

force.  He suggests Sergeant McMillan did not make the grievance process available to him and

should have known that Plaintiff's injuries were too serious to transfer him.  Plaintiff asserts in

counts nine, ten, eleven and twelve that SIS Lieutenant Conway, Counselor Lubonovich,

Counselor Moore, and Unit Manager Delgado allowed Plaintiff to be placed in segregation and

did not contact internal affairs.  He claims these Defendants also should have known his injuries

were too serious for a transfer.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a

claim upon which relief can be granted or if it lacks an arguable basis in law or fact.[2]  *Neitzke v.*

*Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law

when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest

---

[2]  A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and
without service of process on the defendant, if the court explicitly states that it is invoking
section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the
reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir.
1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Harris v.*
*Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th
Cir. 1985).

4

(4:12CV2802)

which clearly does not exist.  *Neitzke*, 490 U .S. at 327.  An action has no arguable factual basis

when the allegations are delusional or rise to the level of the irrational or "wholly incredible."

*Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  *See also Lawler*, 898 F.2d at 1199.

   When determining whether the plaintiff has stated a claim upon which relief can be

granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept

all factual allegations as true, and determine whether the complaint contains "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  The plaintiff's obligation to provide the grounds for relief "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

*at 555.*  Although a complaint need not contain detailed factual allegations, its "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all the allegations in the complaint are true."  *Id.* (citations omitted).  The Court is "not

bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*,

478 U.S. 265, 286 (1986).  The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further

explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id*. at 678.  Furthermore, "[t]he plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant acted unlawfully."  *Id.*  This determination is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Id* at 679.

(4:12CV2802)

### III.  Law and Analysis

####   A.  *Bivens* Claims against the United States

As an initial matter, Plaintiff cannot assert a *Bivens* claim against the United States or the BOP.  The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity.  *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941).  Congress defines the exact terms and conditions upon which the government and its agencies may be sued and the terms of its consent define the parameters of federal court jurisdiction to entertain suits brought against the United States.  *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Honda v. Clark*, 386 U.S. 484, 501 (1967).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied.  *United States v. King*, 395 U.S. 1,4 (1969); *Soriano v. United States*, 352 U.S. 270, 276 (1957).

*Bivens* provides a cause of action against individual officers acting under color of federal law alleged to have acted unconstitutionally.  *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001).  The United States has not waived sovereign immunity for itself or for any of its agencies for a *Bivens* action.  *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994).  Because the only claims Plaintiff asserts against the BOP are *Bivens* claims, the BOP must be dismissed from this action.  *Okoro v. Scibana*, 63 Fed.Appx. 182, 184 (6th Cir. 2003) (stating that a federal prisoner can not bring a *Bivens* action against the BOP).

6

(4:12CV2802)

### B.  *Bivens* **Claims against NEOCC or CCA**

CCA, which owns and operates NEOCC, is a private corporation.  To avoid imposing asymmetrical liability costs on private prison facilities, the Supreme Court declined to expand *Bivens* to provide this cause of action against a private prison corporation.  *Malesko*, 534 U.S. at 70-74 (pointing out that when a prisoner in a BOP facility alleges a constitutional deprivation, his only remedy lies against the offending individual officer).  Plaintiff therefore cannot bring *Bivens* claims against CCA or against NEOCC, the prison it operates.  *Shan Wei Yu v. NEOCC*, No. 4:12CV0507, slip op. at 5-6 (N.D. Ohio Dec. 26, 2012) (Pearson, J.) (ECF No. 4 in No. 4:12CV0507).

### C.  *Bivens* **Claims against Employees of a Private Prison**

Recently, the United States Supreme Court declined to extend *Bivens* to the employees of a private prison under certain circumstances.  *Minneci v. Pollard*, 132 S. Ct. 617, 626 (2012). "[A] federal prisoner seek[ing] damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law . . ., must seek a remedy under state tort law."  *Id.*  A *Bivens* remedy cannot be implied.

Plaintiff's claims against Officer Murphy are based on allegations of use of excessive force.  Excessive force claims are analogous to assault and battery claims under Ohio tort law. Because traditional Ohio tort law provides a remedy for claims of this nature, Plaintiff cannot proceed with a cause of action under *Bivens* against Officer Murphy.  *See Montoya-Hernandez v.*

7

(4:12CV2802)

*Watkins*, No. 6:11-CV-009-BI ECF, 2012 WL 204075, at *3 (N.D. Tex. Jan. 24, 2012)

(dismissing Plaintiff's claims and finding that Plaintiff had the state law claims of assault or

battery available to him).

Moreover, Plaintiff's claims against the other Defendants are derivative of his claim

against Officer Murphy and are based on a theory of *respondeat superior*.  *Respondeat superior*,

however, is not a viable basis for liability under *Bivens*.  *Okoro*, 63 Fed.Appx. at 184; *Jones v.

City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978) ("the theory of *respondeat superior* [is]

fundamentally inconsistent with the import of *Bivens*.").

Even if a *Bivens* action could be brought under a theory of *respondeat superior* liability,

there would be no available cause of action against these private prison employees in light of

*Minneci*.  It is well-established under Ohio tort law that an employer or supervisor may be held to

be liable under the doctrine of *respondeat superior* if the tort of the employee was committed

within the scope of his employment.  *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991).  Where the tort

is intentional, as is the case here, the behavior giving rise to the tort must be "calculated to

facilitate or promote the business for which the servant was employed."  *Id.* (quoting *Little

Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869)).  Because Plaintiff has a remedy

available under state tort law against Captain Austin, Sergeant McMillan, Unit Manager

Delgado, SIS Lieutenant Conway, Counselor Lubonovich, Counselor Moore, Officer Mort,

Officer Daily, and Officer John Doe, he would not be able to bring a cause of action against these

private prison employees under *Bivens*.  *Minneci*, 132 S. Ct. at 622-23.

8

(4:12CV2802)

## IV.  Conclusion

Accordingly, the *Bivens* claims are dismissed pursuant to 28 U.S.C. § 1915(e).  Plaintiff may be able to allege state law tort claims against Officer Murphy and the other employees of NEOCC or CCA in state court.  *See e.g.*, *Vargas v. Joe Corley Detention Facility*, No. H-11-1963, 2012 WL 6042201, at *5 (S.D. Texas Dec. 4, 2012) (dismissing without prejudice plaintiff's claims that alleged state law tort actions).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


  April 29, 2013                                      /s/ Benita Y. Pearson                    
Date                                                          Benita Y. Pearson
                                                                   United States District Judge

9